IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

R. ALEXANDER ACOSTA, SECRETARY
OF LABOR, UNITED STATES
DEPARTMENT OF LABOR,

        Plaintiff,                        Civil Action No. 2:17-cv-01242

      v.

HEART II HEART, LLC, a company, and
TONI CHANDLER DUNCAN, individually,
and as owner, and as corporate officer of the
aforementioned company,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

### I.    BRIEF INTRODUCTION

On September 25, 2017, Plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor (hereinafter "Plaintiff" or "Secretary of Labor") filed a Complaint against Defendants therein alleging that Defendants violated "the provisions of Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act of 1938." *See* Complaint.  Accordingly, Plaintiff prays "[f]or judgment pursuant to Section 16(c) of the Act finding Defendants liable for unpaid minimum wage and overtime compensation due to certain of Defendants' current and former employees listed in the attached Schedule A for the period of February 1, 2015, through August 18, 2017, and for an equal amount due to certain of Defendants' current and former employees in liquidated damages." *Id*. at WHEREFORE CLAUSE (2).

Defendants are entitled to partial summary judgment as a matter of law, because a significant number of Defendants' employees are exempt from the provisions of the Fair Labor Standards Act ("FLSA").  Indeed, these exempt employees worked in a managerial or

administrative capacity on behalf of Defendant Heart II Heart, LLC ("H2H") and Defendant Toni Duncan ("Ms. Duncan") (i.e., the owner of H2H) and are therefore entitled to claim exempt status as bona fide executives, administrators and/or professionals.

Additionally, three former employees (i.e., Tiffany Blotzer, Alexandria Prentice and Crystal Waits) executed releases in favor of H2H regarding any FLSA claims these employees have or may have had as a consequence of their prior employment with H2H. These releases were the product of separate lawsuits asserted by the former employees against H2H. Accordingly, to the extent that Plaintiff seeks to hold Defendants liable under the FLSA for back wages and/or liquidated damages related to the employment of Tiffany Blotzer, Alexandria Prentice and/or Crystal Waits, summary judgment should be entered in favor of Defendants and against Plaintiff.

Furthermore, Plaintiff is not entitled to liquidated damages under the FLSA, because Defendants' alleged acts and/or omissions were done in "good faith" and Defendants had "reasonable grounds" for believing they did not violate the FLSA. *See* 29 U.S.C. § 260; *see also Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 433 (3d Cir. 2017) ("To avoid mandatory liability for liquidated damages, an employer must show that it acted in good faith and that it had reasonable grounds for believing that it was not violating the Act"), *cert. denied sub nom. Am. Future Sys., Inc. v. Acosta*, 138 S. Ct. 2621 (U.S. 2018). More specifically, Defendants entered into agreements with multiple staffing agencies for the provision of direct care services to Defendants' clients. Defendants paid the staffing agencies, which in turn provided direct care workers for the provision of services to Defendants' clients. Defendants did not consider the relevant direct care workers to be Defendants' employees. To the contrary, Defendants viewed the direct care workers as independent contractors who were

employees of and paid by the staffing agencies. Therefore, Defendants in good faith did not believe they violated the FLSA.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). Courts have held:

> Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. . . . Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.

*See Porter v. Broadspire & Comcast Long Term Disability Plan*, 492 F. Supp. 2d 480, 483-84 (W.D. Pa. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324(1986) and *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir.1990) (other internal citations omitted)).

## III. ARGUMENT

**A. TIFFANY BLOTZER, ALEXANDRIA PRENTICE AND CRYSTAL WAITS EXECUTED RELEASES IN FAVOR OF H2H WITH RESPECT TO ANY FLSA CLAIMS THEY MIGHT HAVE AND, THEREFORE, PLAINTIFF IS PRECLUDED FROM SEEKING DAMAGES RELATING TO THESE FORMER EMPLOYEES**

On July 11, 2016, Tiffany Blotzer filed a lawsuit against Defendants arising from the termination of her employment with H2H at Docket number GD 16-012413 in the Court of Common Pleas of Allegheny County, Pennsylvania. The matter ultimately settled, and Ms. Blotzer executed a release agreement dated March 4, 2017 thereby releasing Defendants from any claims arising under the FLSA. *See* Blotzer Release at pp. 4-6, appended hereto as Exhibit "1." Ms. Blotzer received a settlement payment totaling $11,000.00 in consideration of the release. *Id*. at pg. 2.

Former employee Alexandria Prentice similarly filed a lawsuit against H2H arising from the termination of her purported employment with H2H (as opposed to ATS Staffing, LLC) at Docket number GD 16-024644 in the Court of Common Pleas of Allegheny County, Pennsylvania. This matter ultimately settled, and Ms. Prentice executed a release agreement dated March 2, 2017 thereby releasing H2H from any claims arising under the FLSA. *See* Prentice Release at pp. 4-5, appended hereto as Exhibit "2." Ms. Prentice received a settlement payment totaling $5,000.00 in consideration of the release. *Id*. at pg. 2.

Finally, former employee Crystal Waits filed a lawsuit against H2H arising from the termination of her employment with H2H at Docket number GD 16-024642 in the Court of Common Pleas of Allegheny County, Pennsylvania. This matter also settled, and Ms. Waits executed a release agreement dated March 12, 2017 thereby releasing H2H from any claims arising under the FLSA. *See* Waits Release at pp. 4-6, appended hereto as Exhibit "3." Ms. Waits received a settlement payment totaling $5,000.00 in consideration of the release. *Id*. at pg. 2.

In light of these releases, Defendants respectfully request that this Honorable Court enter partial summary judgment in their favor and against Plaintiff to the extent Plaintiff is seeking

damages for unpaid minimum wages, overtime wages and/or liquidated damages related to the former employment of Tiffany Blotzer, Alexandria Prentice and/or Crystal Waits.

### B. DEFENDANTS' EMPLOYEES WHO WORKED IN A MANAGERIAL AND/OR ADMINISTRATIVE CAPACITY ARE EXEMPT FROM THE PROVISIONS OF THE FLSA

The FLSA provides:

**(a) Minimum wage and maximum hour requirements**

The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and 207 of this title shall **not** apply with respect to—

(1) any employee employed in a bona fide executive, administrative, **or** professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of Title 5, except that an employee of a retail or service establishment **shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity** because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if **less than 40 per centum** of his hours worked in the workweek are devoted to such activities);

29 U.S.C. § 213(a)(1) (emphasis added).

According to the relevant regulations promulgated by the Secretary of the Department of Labor: "A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's **salary and duties** meet the requirements of the regulations in this part."

29 C.F.R. § 541.2 (emphasis added). Federal courts have stated:

> An **administrative employee** is defined in the Regulations as someone "whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and "whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." The Regulations state that work in **personnel management**, human resources, employee benefits and labor relations all qualify as "work directly related to management or general business operations."

*Sally-Harriet v. N. Children Servs.*, 2019 WL 1384275, at *9 (E.D. Pa. Mar. 26, 2019) (emphasis added) (*quoting* 29 C.F.R. § 541.200(a)(2)-(3) and 29 C.F.R. § 541.201)). "Work directly related to management or general business operations" also includes, but is not limited to, tasks such as accounting, budgeting, quality control, safety and health, computer network or internet and database administration. *See* 29 C.F.R. § 541.201 (b). Administrative employees must be "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week[1] . . . ." 29 C.F.R. § 541.200(a)(1).

> Additionally:
>
> Under the FLSA . . . an **executive employee** is an employee who, <u>inter alia</u>, has the "primary duty [of] management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof" and "has the authority to **hire or fire other employees** or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."

*Kotowski v. JGM Fabricators & Erectors, Inc.*, 2019 WL 2070412, at *1 (E.D. Pa. Feb. 28, 2019) (emphasis added) (*quoting* 29 C.F.R. § 541.100(a)(2), (4)). The term "management":

> [I]ncludes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

---

[1]  As of December 1, 2016, the weekly salary rate was increased to $913.00 for administrative and executive employees. 29 C.F.R. § 541.600(a). However, the note to this rule states that this rule is "enjoined from implementation or enforcement." *Id*. at note.

To demonstrate status as an executive employee, the regulations further require employees to be "[c]ompensated on a salary basis at a rate of not less than $455 per week . . ." and the employees must "customarily and regularly direct the work of two or more other employees." *Id*. at § 541.100(a)(1), (3). Business owners that have "at least a bona fide 20-percent equity interest in the enterprise" qualify for this exemption. *Id*. at § 541.101.

Importantly:

> Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

*Id*. at § 541.106(a). Furthermore:

> To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id*. at § 541.700(a).

Here, the following persons qualify as administrative or executive employees such that they are exempt from the provisions of the FLSA:[2]

1. Tiffany Blotzer: H2H00098-99

    a. Title – Program Manager and Staff Trainer

    b. Salary – $720.00 per week

    c. Job Duties – H2H003462-3464, H2H003474 (including but not limited to the following)

        i. Monitoring the entire site for safety/health issues;
        ii. Ensure staff/clients complete daily chores;
        iii. Balancing and reconciling house funds and client funds;
        iv. Creating monthly client budgets;
        v. Coordinate client food stamp balances and grocery shopping;
        vi. Complete monthly fire drills, manage emergency supplies and first aid supplies;
        vii. Complete monthly vehicle checks for client transport and monitor transportation log;
        viii. Complete annual Fire Safety training and train all new staff with respect to the same; and
        ix. Manage maintenance issues with landlords for all sites.

2. Virginia Charles: H2H002138-2158

    a. Title – Program Specialist

    b. Salary – $600.00 per week

    c. Job Duties – H2H003459-3460 (including but not limited to the following)

        i. Program Specialist "coordinates all services and required appointments, meetings, etc. for Clients. . . . responsible to . . . learn ways to improve [client] responses/progress and provide staff with training and guidance . . . ."
        ii. Maintain staff log and goal binders;

---

2   Attached hereto are Exhibit "4," i.e., Employment Contracts and Exhibit "5," i.e., Job Descriptions, which collectively contain the relevant salary data and job descriptions for each employee Defendants assert are exempt from the relevant provisions of the FLSA. These documents were previously exchanged during discovery and are identified herein by their bates stamp numbers, when summarizing the salary and job description for each employee herein.

      iii. Maintain and follow calendar for client appointments and coordinate same with managers;
      iv. Complete weekly client progress reports;
      v. Monitor clients to watch behaviors and manage client needs;
      vi. Document client specific trainings;
      vii. Run all incident quarterly count reports;
      viii. Quarterly review of emergency plan update and client information update;
      ix. Annual client assessments, ISP reviews and Chapter 51 and 6400 self-monitoring, audits and Plan of Corrections;
      x. Assist new clients with submitting applications for food stamps and other benefits;
      xi. Complete new client admission process by building new client file, completing change of address, notifying fire marshall and new client intake assessments; and
      xii. Ensure new staff hires complete client ISP and client specific trainings and documentation.

3. Sharnette Crite-Evans: H2H003485

    a. Salary – Program Specialist

    b. Title – $825.20 per week

    c. Job Duties – H2H003459-3460 (including but not limited to the following)

      i. Program Specialist "coordinates all services and required appointments, meetings, etc. for Clients. . . . responsible to . . . learn ways to improve [client] responses/progress and provide staff with training and guidance . . . ."
      ii. Maintain staff log and goal binders;
      iii. Maintain and follow calendar for client appointments and coordinate same with managers;
      iv. Complete weekly client progress reports;
      v. Monitor clients to watch behaviors and manage client needs;
      vi. Document client specific trainings;
      vii. Run all incident quarterly count reports;
      viii. Quarterly review of emergency plan update and client information update;
      ix. Annual client assessments, ISP reviews and Chapter 51 and 6400 self-monitoring, audits and Plan of Corrections;
      x. Assist new clients with submitting applications for food stamps and other benefits;
      xi. Complete new client admission process by building new client file, completing change of address, notifying fire marshall and new client intake assessments; and
      xii. Ensure new staff hires complete client ISP and client specific trainings and documentation.

4. William (Shawn) Elliott: H2H00195, H2H00222-223

   a. Title – Site Manager and Staff Supervisor

   b. Salary – $960 per week, increased to $1,000.00 for extra direct care work

   c. Job Duties – H2H003457-3458 (including but not limited to the following)

      i. Daily management of staffing needs;
      ii. Coordinates all client visits and staffing changes;
      iii. Weekly site inspections, ensure completion of timesheets and review staff communication logs at all sites;
      iv. Review and document all staff training and requirements;
      v. Archive visitor and recreation logs;
      vi. Manage all new staff hire orientations, mentoring and training;
      vii. Manage creation of fire exit/escape plans at each site and post the same on each floor of each site;
      viii. Recruit, screen and interview new applicants as necessary;
      ix. Provide staff counseling; and
      x. Close and archive employment files upon end of staff employment.

5. E'reek Hopkins: H2H003829-3831

   a. Title – Manager and Fire Safety Officer

   b. Salary – $560.00 per week

   c. Job Duties – H2H003456 (including but not limited to the following)

      i. Monitoring and addressing safety issues as they arise;
      ii. Conducting routine checks and drills as required by law;
      iii. Setting up new sites in conformance with federal and state statutes;
      iv. Fire trainer;
      v. Provide safety training to new clients and staff at intake and annually;
      vi. Yearly site inspections; and
      vii. Report and address vehicle and site safety issues.

6. Kemi Lay: H2H003543

   a. Title – Program Specialist

   b. Salary – $600.00 per week

   c. Job Duties – H2H003459-3460 (including but not limited to the following)

      i. Program Specialist "coordinates all services and required appointments, meetings, etc. for Clients. . . . responsible to . . . learn ways to improve [client] responses/progress and provide staff with training and guidance . . . ."
     ii. Maintain staff log and goal binders;
    iii. Maintain and follow calendar for client appointments and coordinate same with managers;
    iv. Complete weekly client progress reports;
     v. Monitor clients to watch behaviors and manage client needs;
    vi. Document client specific trainings;
   vii. Run all incident quarterly count reports;
  viii. Quarterly review of emergency plan update and client information update;
    ix. Annual client assessments, ISP reviews and Chapter 51 and 6400 self-monitoring, audits and Plan of Corrections;
     x. Assist new clients with submitting applications for food stamps and other benefits;
    xi. Complete new client admission process by building new client file, completing change of address, notifying fire marshall and new client intake assessments; and
   xii. Ensure new staff hires complete client ISP and client specific trainings and documentation.

7. Constance Mack: H2H003486-3487

   a. Title – Operations Manager

   b. Salary – $700.00 per week

   c. Job Duties – H2H003469 (including but not limited to the following)

      i. Community relations for expansion;
      ii. Service exploration;
      iii. Site location/retention/expansion;
      iv. Client recruiting; and
      v. Staff recruiting.

8. Kellie Mason: H2H003861

   a. Title – Medical Administrator and Trainer

   b. Salary – $520.00 per week

   c. Job Duties – H2H003472 (including but not limited to the following)

      i. Medical administration trainer;
      ii. MARS management;

11

       iii. Incident manager;
       iv. Responsible for client medical provider transitions;
       v. Supervises completion of client medical appointments via the House Coordinators;
       vi. Reports to the Program Manager and Program Director; and
       vii. Collaborates with Program Specialist and Client Manager.

9. Tameka Millander: H2H003492-3493

   a. Title – Quality Manager/Human Resources

   b. Salary – $1,000.00

   c. Job Duties – H2H003455-3456 (including but not limited to the following)

       i. Daily performance of office administration;
       ii. Weekly assistance with quick books entries;
       iii. Maintain staff matrix/calendar and communicate and ensure completion each month;
       iv. Distribute client and staff surveys and community surveys;
       v. Assist with annual cost reporting;
       vi. Ensure liability/mediation forms are completed by new clients and faxed to PCALIC upon new client intake;
       vii. Upon new staff hire, add staff to monthly matrix/calendar and enroll in necessary trainings;
       viii. Register new staff for fingerprints;
       ix. Add new staff to employee roster and distribute to site managers, fiscal officer, CEO and Program Specialists;
       x. Update and maintain website as needed; and
       xi. Hire and fire staff for medical administration, cpr/first aid, etc.

10. Derrick Shedrick: H2H – Supp2 – 0122-126

   a. Title – Part Owner (i.e., 50% equity interest)

   b. Salary – Owner Exempt

   c. Job Duties – Varied, Owner

11. Crystal Waits: H2H003583

   a. Title – Program Director and Human Resources

   b. Salary – $50,000.00 per year

   c. Job Duties – H2H003470 (including but not limited to the following)

      i. Designed as a direct support to the CEO to establish a local management presence with CEO living out-of-state;
     ii. Reports directly to CEO and collaborates with Program Manager;
    iii. Quality management;
    iv. Staff recruiting and orientations;
     v. Staff training;
    vi. Management of supervisory staff;
   vii. Client recruiting and admissions;
  viii. Certified investigator;
    ix. Quarterly incident reviews;
     x. Modify and updated company policies and procedures;
    xi. Create and adjust position tasks as necessary;
   xii. Employee benefits management; and
  xiii. Community relations, etc.

12. Grace Watters: H2H003723

   a. Title – Management Coordinator

   b. Salary – $720.00 per week

   c. Job Duties – H2H3462-3464 (including but not limited to the following)

      i. Monitoring the entire site for safety/health issues;
     ii. Ensure staff/clients complete daily chores;
    iii. Balancing and reconciling house funds and client funds;
    iv. Creating monthly client budgets;
     v. Coordinate client food stamp balances and grocery shopping;
    vi. Complete monthly fire drills, manage emergency supplies and first aid supplies;
   vii. Complete monthly vehicle checks for client transport and monitor transportation log;
  viii. Complete annual Fire Safety training and train all new staff with respect to the same; and
    ix. Manage maintenance issues with landlords for all sites.

Therefore, Defendants respectfully request that this Honorable Court enter summary judgment in favor of Defendants and against Plaintiff with respect the twelve employees identified above.

### C. LIQUIDATED DAMAGES SHOULD NOT BE AWARDED, BECAUSE DEFENDANTS HAD REASONABLE GROUNDS FOR BELIEVING THEIR CONDUCT DID NOT VIOLATE THE PROVISIONS OF THE FLSA

Plaintiff is not entitled to liquidated damages under the FLSA, because Defendants' alleged acts and/or omissions were done in "good faith" and Defendants had "reasonable grounds" for believing they did not violate the FLSA. *See* 29 U.S.C. § 260; *see also Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 433 (3d Cir. 2017) ("To avoid mandatory liability for liquidated damages, an employer must show that it acted in good faith and that it had reasonable grounds for believing that it was not violating the Act"), *cert. denied sub nom. Am. Future Sys., Inc. v. Acosta*, 138 S. Ct. 2621 (U.S. 2018).

Here, Plaintiff alleges that Defendants owe back wages and overtime compensation to certain employees. Complaint ¶¶6-7. More specifically, Plaintiff asserts that Defendants willfully violated Section 6 of the FLSA by "employing direct care workers, program specialists, and house coordinators/managers . . . and compensating these employees at rates less than the applicable statutory minimum rate . . ," *id*. ¶6, and willfully violated Section 7 of the FLSA by failing to pay employees time and a half as compensation for hours worked "in excess of the prescribed hours." *Id*. ¶7. In light of these purported violations of the FLSA, Plaintiff prays for liquidated damages in an amount equal to the amount of back wages and overtime wages allegedly owed. *Id*. at WHEREFORE CLAUSE(2). Plaintiff is mistaken.

Defendants paid at least two different staffing agencies for the provision of direct care workers who in turn provided life skills training and direct care services to Defendants' clients. *See* ATS Pay Proofs, appended hereto as Exhibit "6"; and Toni Duncan D.T. at pp. 142:13 – 143:9, 149:11-22 and 258:17 – 260:21, relevant portions appended hereto as Exhibit "7." First, from April 16, 2016 through July 22, 2016, Defendants paid ATS Staffing, LLC ("ATS")

14

$134,176.13 for the provision of direct care workers who in turn provided direct care services to Defendants' clients as independent contractors.  *See* ATS Pay Proofs at H2H003484.

Defendants also contracted with RAC Staffing Solutions (RAC) for the provision of direct care services.  *See* Toni Duncan D.T. at pp. 142:13 – 143:9, 149:11-22 and 258:17 – 260:21.  From September of 2015 through March of 2016, RAC's employees (i.e., Rasul Aquil and Gregory Marshall) provided direct care services to H2H's clients.  *Id.*  Indeed, the owner of RAC (i.e., Rasul Aquil) provided a W-9 tax form dated September 1, 2015 to Defendants, because RAC was retained and paid by Defendants as an independent contractor.  *See* RAC W-9, appended hereto as Exhibit "8; *see also* Toni Duncan D.T. at pp. 259:2 – 260:21.

Due to the independent contract work of ATS and RAC, it was not until the summer of 2016 (after the engagement with ATS ended on July 22, 2016) that H2H hired direct care workers as W-2 employees of H2H.  *See* Toni Duncan D.T. at pg. 156:20-24.  Defendants reasonably believed that they were in compliance with the FLSA from September of 2015 through July of 2016, because they made payments in good faith to two separate staffing agencies for the provision of direct care services to H2H clients.  Therefore, Defendants respectfully request that summary judgment be entered in their favor and against Plaintiff with respect to Plaintiff's prayer for liquidated damages.

## IV.   CONCLUSION

For all of the foregoing reasons, Defendants, Heart II Heart, LLC and Toni Chandler Duncan, respectfully request that this Honorable Court enter partial summary judgment in their favor and against Plaintiff.

                                      BURNS WHITE LLC

                                By: _/s/ John M. Steidle_____
                                        John M. Steidle, Esq.
                                        PA I.D. No.84404
                                        *Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 24th day of June, 2019, the foregoing **Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment** has been electronically filed and served upon all counsel and/or parties of record via the Court's ECF filing system.

                        BURNS WHITE LLC

By:    /s/ *John M. Steidle*
        John M. Steidle, Esquire
        *Counsel for Defendants*