R. ALEXANDER ACOSTA, *Secretary of Labor, United States Department of Labor*

*Plaintiff,*

v.

HEART II HEART, LLC, *a company*, and TONI CHANDLER DUNCAN, *individually, and as owner, and as corporate officer of the aforementioned company*,

*Defendant.*

Civil Action No. 2:17-cv-1242

Hon. William S. Stickman, IV

## MEMORANDUM OPINION AND ORDER

WILLIAM S. STICKMAN IV, District Judge.

Plaintiff, the Secretary of Labor ("Secretary"), filed this action contending Defendants, Heart II Heart, LLC ("H2H") and Toni Candler Duncan ("Duncan"), willfully violated the minimum wage, overtime and recordkeeping requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. More specifically, the Secretary alleges that Defendants failed to pay their employees the applicable statutory minimum rate for hours worked, misclassified their employees as independent contractors, failed to pay their employees a premium rate of one and one half their regular rate for hours worked in excess of forty hours in a workweek, and failed to keep accurate records of hours worked. The Secretary claims that Defendants violated the provisions of Sections 6, 7, 11(c), 15(a)(2) and 15(a)(5) of the FLSA. The Secretary seeks a judgment pursuant to Section 16(c) finding Defendants liable for unpaid minimum wage and overtime compensation due to employees identified on Updated Schedule A for the period of February 1, 2015, through August 18, 2017, and for an equal amount due to certain current and

former employees in liquidated damages. He also seeks back wages and liquidated damages that may be owed for violations continuing after August 18, 2017, and an injunction permanently enjoining Defendants from violating the FLSA. *See* Plaintiff's Complaint ("Pl.'s Compl.") (ECF No. 1).

Pending before the Court is the Secretary's Motion for Partial Summary Judgment (ECF No. 57). The Secretary submits that he is entitled to partial summary judgment because there are no genuine issues of material fact such that: (1) H2H is a covered enterprise under the FLSA; (2) Defendants were employers of all the individuals listed on Updated Schedule A and are jointly liable for FLSA violations; (3) Defendants violated the overtime requirements of Section 7 of the FLSA by failing to pay their employees the overtime rate of at least one and one-half times their regular rate for all hours worked in excess of forty hours a workweek; (4) Defendants violated the Section 11(c) recordkeeping requirements of the FLSA; and (5) Defendants' violations were willful. The Secretary asserts that Defendants are liable under Section 16(c) of the FLSA for liquidated damages in an amount equal to their liability for back wages. Lastly, the Secretary requests Defendants be enjoined from further violations of the FLSA. *See* Plaintiff's Motion for Partial Summary Judgment ("Pl.'s Mot. for Summ. J.") (ECF No. 57), pp. 1-2.

The Secretary's Motion for Partial Summary Judgment (ECF No. 57) is GRANTED in part and DENIED in part.

## PROCEDURAL BACKGROUND

On, September 25, 2017, the Secretary filed his Complaint. Defendants filed their Answer (ECF No. 6) on December 11, 2017. Defendants filed a Motion for Partial Summary Judgment (ECF No. 53) on June 24, 2019. That same day, the Secretary filed a Motion for Partial Summary Judgment (ECF No. 57). On August 29, 2019, the case was reassigned to the Court who scheduled

oral argument on the motions. Oral argument occurred on October 2, 2019. By October 3, 2019,

Order (ECF No. 77), the Court denied Defendants' Motion for Partial for Summary Judgment.

The Court held as a matter of law that (1) the non-court approved settlement agreements resolving

the lawsuits brought by three former employees against Defendants in the Court of Common Pleas

of Allegheny County, Pennsylvania, did not release Defendants from FLSA claims in this action,

and (2) twelve employees (*i.e.*, Tiffany Blotzer, Virginia Charles, Sharnette Crite-Evans, William

(Shawn) Elliot, E'reek Hopkins, Kemi Lay, Constance Mack, Kelli Mason, Tameka Millander,

Derrick Shedrick, Crystal Waits and Grace Watters) were not exempt from FLSA's minimum

wage and overtime requirements under either the executive employee exemption, 29 C.F.R. §

541.100(a)(1)-(4), or the administrative employee exception, 29 C.F.R. § 541.200(a)(1)-(3). The

Court must now resolve the Secretary's Motion for Partial Summary Judgment.

## FACTUAL BACKGROUND

H2H is a Pittsburgh company that was established in 2012, but did not begin to provide

direct care services until 2015. It provides care for adults with intellectual or physical disabilities,

direct care services to elderly, ill, or those homebound, and it offers individual or small group

homes for clients with disabilities. All clients reside on the premises of homes rented by H2H.

Direct care workers assist H2H's clients with activities of daily living, administer mediation, and

care for clients. House managers provide supervision and guidance to direct care workers, ensure

the services provided to clients and in the home are in compliance with governing health and direct

care standards and regulations, and cover direct care shifts as needed. Program specialists assist

direct care workers, ensure the services provided to clients and in the home are in compliance with

governing health and direct care standards and regulations, maintain paperwork, and cover direct

care shifts as needed. *See* Plaintiff's Statement of Undisputed Facts ("Pl.'s SOF") (ECF No. 60),

¶¶ 1, 2, 39-41; *see also* Defendant's Responsive Concise Statement ("Defs.' Resp.") (ECF No. 63), ¶¶ 1, 2, 39-41.

Toni Duncan has been the chief executive officer of H2H since its inception, and she has solely owned H2H since September 15, 2015.[1] She is responsible for admissions, discharges and overall care of H2H's clients, and she observes the care H2H employees provide to H2H's clients. Duncan hires H2H employees (including direct care workers), sets the pay rate of all H2H employees (*i.e.*, who is salaried, hourly, and who is "contract staff"/independent contractor), disciplines H2H employees, and fires H2H employees. She decides what training H2H employees require and she created the H2H employee policies handbook, which outlines the conditions of employment. Employees did not have their own employer identification number, workers' compensation insurance, or liability insurance. *See* Pl.'s SOF ¶¶ 4-5, 9-17, 82-84; *see also* Defs.' Resp. ¶¶ 4-5, 9-17, 82-84.

Kebra Murphy ("Murphy"), Duncan's daughter, has been the chief financial officer ("CFO") of H2H since its inception and assists in the supervision of direct care workers. She reports to Duncan, who placed her in the position of CFO. Murphy and Duncan created the work schedule and assigned clients to direct care workers. H2H provided timesheets to employees, and Murphy and Duncan used timesheets (completed by employees) to track hours worked by employees. Employees turned their timesheets into a H2H manager and they were then submitted to Murphy by mail or fax. The timesheets submitted by employees most accurately reflected the hours they worked. Murphy, who had no training on processing payroll and never took accounting

---

[1] Prior to starting H2H, Duncan contracted with a company, CRS, in North Carolina that engaged in similar work as H2H. She provided direct care workers to CRS, who were classified as independent contractors and were paid hourly. These workers did not get paid a premium rate for hours worked in excess of 40 hours a workweek. *See* Pl.'s SOF ¶ 7; *see also* Defs.' Resp. ¶ 7.

courses, processed the payroll for H2H and then sent the timesheets to Duncan. H2H employees received their pay directly from H2H via direct deposit. *See* Pl.'s SOF ¶¶ 19-22, 25-32, 34; *see also* Defs.' Resp. ¶¶ 19-22, 25-32, 34. From July of 2016, until February of 2017, Defendants used Sure Payroll to record all pay and time records, and from February of 2017, until the present, they have used ADP to process and maintain H2H's payroll records. *See* Defs.' Resp. ¶ 74.

All of the individuals identified on Updated Schedule A performed work for H2H. *See* Pl.'s SOF ¶ 8; *see also* Defs.' Resp. ¶ 8. The Secretary contends that from the beginning of H2H until July of 2016, Defendants intentionally misclassified staff performing direct care work as independent contractors and paid them straight time for all hours worked. *See* Pl.'s SOF ¶ 42. Defendants counter that direct care workers were hired as 1099 independent contractors through two separate staffing agencies, RAC Staffing or ATS Staffing, and H2H paid the staffing agencies for the provision of direct care workers from September of 2015 through July of 2016. H2H admits it did not pay the direct care workers overtime during this period.[2] *See* Defs.' Resp. ¶¶ 42, 70, 76.

Both of the staffing agencies used by H2H had close personal ties to Duncan. RAC Staffing was owned by Duncan's college friend. ATS Staffing was owned by an office manager, Carolina Nitta, who worked for Apex Therapeutic Services, a North Carolina Company owned by Duncan. Duncan impelled Ms. Nitta to start ATS Staffing so that she did not have to use RAC Staffing and could avoid paying a referral fee to other staffing agencies. Duncan helped Ms. Nitta open ATS Staffing. ATS Staffing's business address was 450 Maxwell Street – the address where Duncan grew up and her mother resides. Some H2H employees first learned of ATS Staffing after, believing they were employed by Defendants, they were directed to sign agreements with ATS

---

[2] H2H made direct deposit payments to employees who signed agreements with ATS Staffing. *See* Pl.'s SOF ¶ 58; *see also* Defs.' Resp. ¶ 58.

Staffing or not get paid. *See* Pl.'s SOF ¶¶ 6, 53-57, 59, 62; *see also* Defs.' Resp. ¶¶ 6, 53-57, 62. The timesheets used by H2H had ATS Staffing's logo, but the contact information, fax number and address listed were the same as that of Apex and H2H, companies both owned by Duncan. *See* Pl.'s SOF ¶ 63; *see also* Defs.' Resp. ¶ 63.

At the beginning of the Department of Labor's investigation of Defendants in June or July of 2016, the employee timesheets from January of 2015, through April or May of 2017, were in North Carolina in Duncan's possession. Investigator Crystal Bibri of the Wage and Hour Division made several attempts to obtain from Defendants the pertinent documents (*e.g.*, pay and time records, a list of employees, etc.) necessary to investigate Defendants' compliance with the FLSA. Defendants failed to produce all of the records requested during the investigation, and they limited the information provided by excluding records regarding direct care workers they dubbed as employed by RAC Staffing and ATS staffing. *See* Pl.'s SOF ¶¶ 65-67; *see also* Defs.' Resp. ¶¶ 65-67. Because of its assertion that it was not responsible for compensating direct care workers until July 23, 2016, Defendants maintain they have no pay and time records for these employees. *See* Defs.' Resp. ¶¶ 74-75. Furthermore, Defendants admit "some pay records prior to July of 2016 are incomplete…." *See id.* at ¶ 75. Notably, when the investigation started, Duncan instructed Murphy to calculate overtime due to H2H employees. Murphy informed Duncan that they paid employees straight time for overtime so employees were due half of their regular rate for overtime hours and those calculations were written on the employee timesheets. *See* Pl.'s SOF ¶ 69; *see also* Defs.' Resp. ¶ 69.

Prior to the investigation, Defendants never consulted with the Department of Labor or took affirmative steps, such as performing research, to ensure they were in compliance with the FLSA. It was only after the investigation commenced that Duncan consulted an attorney regarding

the difference between an independent contractor and an employee. *See* Pl.'s SOF ¶¶ 78-79; *see also* Defs.' Resp. ¶¶ 78-79. She did so because, "at that point [she] knew something was wrong." *See* Pl.'s SOF ¶ 80; *see also* Defs.' Resp. ¶ 80. That said; Duncan admitted knowing the minimum wage requirements under the FLSA, specifically that overtime hours had to be paid at time and a half the regular rate. She also knew that if workers were independent contractors of a staffing agency, she did not have to pay taxes, unemployment insurance, workers compensation insurance, workers compensation, social security and Medicaid. Duncan admitted that by not paying employees time and a half, she could let employees work as many hours as they wanted and it allowed her to hire fewer people. *See* Pl.'s SOF ¶¶ 81, 88, 89; *see also* Defs.' Resp. ¶¶ 81, 88, 89.

Defendants' current policy is that most staff, including direct care workers, are contracted for the initial 90 days before being offered a position as an employee. These individuals have the same duties during and after the 90 days. H2H continues to hire contract staff as independent contractors through a staffing agency. *See* Pl.'s SOF ¶¶ 71-72, 77; *see also* Defs.' Resp. ¶¶ 71-72, 77.

## STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided in order to resolve the substantive claim or defense to which the motion is directed. In other words, there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing

evidence. *Id.* "Real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof," will defeat a motion for summary judgment. *El v. Se Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

## ANALYSIS

The Secretary has sought partial summary judgment in his favor arguing that the material issues of fact are not genuinely in dispute that: (A) Defendants violated Section 7 of the FLSA; (B) Defendants violated the recordkeeping requirements of Section 11(c) of the FLSA; (C) Defendants acted with reckless disregard sufficient to establish that their violations of the FLSA were willful as a matter of law; (D) Defendants are liable under Section 16 of the FLSA for liquidated damages; and, (E) a prospective injunction is necessary to prevent Defendants from further violating the FLSA. *See* Pl.'s Mot. for Summ. J., pp. 1-2.

The Court grants in part and denies in part the Secretary's Motion for Summary Judgment (ECF No. 57) for the reasons discussed below. Prior to that discussion, the Court must address two issues. First, whether H2H is a covered enterprise under the FLSA. Second, whether Duncan is a 3(d) employer individually liable under the FLSA. The answer to both questions is yes.

The FLSA is a remedial statute designed to abolish substandard labor conditions. *See* 29 U.S.C. § 202(a). To be subject to the FLSA's minimum wage and overtime provisions, an employer must be an enterprise performing activities "for a common business purpose, and includes all activities whether performed in one or more establishments" or by one or more organizational units. *See* 29 U.S.C. § 203(r)(l); *see also* §§ 206(a) and 207(a). Defendants do not deny "that H2H is a covered enterprise whose activities are performed for a business purpose as those terms are defined under the FLSA and as those terms are applied to H2H's employees." *See* Defendants' Memorandum of law in Opposition ("Defs. Memo. of Law in Opp'n") (ECF No. 62),

p. 2. Therefore, the Court holds as a matter of law that H2H is a covered enterprise under the FLSA.

Next, it must be determined whether Duncan is an 3(d) employer individually liable under the FLSA. *See* 29 U.S.C. § 203(d). Duncan has not mounted an objection to being classified as such. *See generally* Defs. Memo. of Law in Opp'n. To determine whether an individual is a joint employer under the FLSA, courts consider whether the individual has:

> (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like.

*Enter. Rent-A-Car*, 683 F.3d 462, 469 (3d Cir. 2012). All of these factors weigh in favor of Duncan being classified as a 3(d) employer.

Duncan has been the chief executive officer of H2H since its inception, and she has solely owned H2H since September 15, 2015. She is responsible for admissions, discharges and overall care of H2H's clients, and she observes the care employees provide to H2H's clients. Duncan hires employees (including direct care workers), sets the pay rate of all employees (*i.e.*, who is salaried, hourly, and who is "contract staff"/independent contractor), disciplines employees, and fires employees. After Murphy processed payroll, she sent the timesheets to Duncan, and Duncan had control of timesheets as far back as January of 2015. Duncan also decided what training employees required and she created the H2H employee policies handbook that outlines conditions of employment. *See* Pl.'s SOF ¶¶ 4-5, 9-17, 36, 65; *see also* Defs.' Resp. ¶¶ 4-5, 9-17, 36, 65. Duncan admitted that "by not paying employees time and a half, she could let employees work as many hours as they wanted which would allow her to hire fewer people," and that "if she had to pay time and a half for overtime hours, she never would have let people work 100 hours because it would fit her budget." *See* Pl.'s SOF ¶ 88; *see also* Defs.' Resp. ¶ 88. She knew the minimum

wage requirements under the FLSA, specifically that overtime hours had to be paid at time and a half the regular rate. Additionally, Duncan knew that if workers were independent contractors of a staffing agency, she did not have to pay taxes, unemployment insurance, workers compensation insurance, workers compensation, social security and Medicaid. Duncan admitted that by not paying employees time and a half, she could let employees work as many hours as they wanted and it allowed her to hire fewer people. *See* Pl.'s SOF ¶¶ 81, 89; *see also* Defs.' Resp. ¶¶ 81, 89. Therefore, the Court holds that the record establishes as a matter of law that Duncan is an employer within the meaning of 29 U.S.C. § 203(d).

The Court will now address, in subsections A through E below, the five grounds upon which the Secretary has sought partial summary judgment.

**A. FLSA Overtime Violations**

Under the FLSA, employers must pay employees time and a half their regular rate for all hours worked above forty hours per week, unless an exemption applies. *See* 29 U.S.C. § 207(a)(1). The Secretary contends that Defendants intentionally misclassified staff performing direct care work as independent contractors and paid them straight time for all hours worked in violation of Section 7.[3] All of the individuals listed on Updated Schedule A, according to the Secretary, were

---

[3] Whether a worker is an employee or an independent contractor under the FLSA is a mixed question of fact and law. *See Martin v. Selker Bros.*, 949 F.2d 1286, 1292 (3d Cir. 1991). "The fact component is the combination of disputed and undisputed facts that comprise the economic relations between the worker and the alleged employer. The law component is the conclusion of whether those facts make a worker an 'employee' or 'independent contractor.'" *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229 (3d Cir. 2019). "In some cases, one or more genuine issues of fact concerning the relevant economic relations may preclude a trial court from drawing a conclusion as a matter of law on the "employee" or "independent contractor" issue. In those cases, the issue would go to trial, with the jury resolving it through either special interrogatories or by deciding the classification issue. *See* Fed. R. Civ. P. 49. But in other cases, [ ]the district court may resolve the issue before trial based on undisputed facts in the record." *Verma*, 937 F.3d at 229. That is the case herein.

employed by Defendants. *See* Plaintiff's Memorandum of Law ("Pl.'s Mem. of Law") (ECF No. 58), pp. 5-10; *see also* Plaintiff's Reply ("Pl.'s Reply) (ECF No. 71), pp. 2-8; Pl.'s SOF ¶ 42. Defendants have admitted that they did not pay time and a half for overtime hours worked to direct care workers classified as independent contractors from September 2015 through July 23, 2016, and they are contesting the employee status of sixteen direct care workers listed on Updated Schedule A.[4] *See* Defs.' Resp. ¶¶ 50, 76.[5]

An employment relationship under the FLSA is determined through the economic realities test. *See Martin*, 949 F.2d at 1293. The six factors to evaluate the employment relationship between workers and an employer under the economic realities test are: 1) the degree of the alleged employer's right to control the manner in which work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his/her managerial skill; 3) the alleged employee's investment in equipment or materials required for his/her task, or his/her employment of helpers; 4) whether the service rendered requires special skills; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business. *Id.* at 1293 (quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985)). No one factor is dispositive. *See Verma*, 937 F.3d at 230. None of the factors asks whether the worker signed an agreement that s/he is an "independent contractor," as

---

[4] The sixteen individuals are Rasul Aquil, Paul Freas, Arleigh Goshorn, Olivia Jackson, Marquia Jones, Gregory Marshall, James Martin, Briona McClain, Latisia Noaks, Ayodeji Olowookere, Alexandria Prentice, William Rose, Cress Ross, Sabrina Scott, Kahari Thakur and Jamel Williams. *See* Defs.' Mem. of Law in Opp'n, p. 5.

[5] By October 3, 2019, Order (ECF No. 77), this Court rejected Defendants' arguments that (1) the non-court approved settlement agreements for Tiffany Boltzer, Alexandria Prentice and Crystal Waits release Defendants from the Secretary's FLSA claims, and (2) twelve employees were exempt from FLSA's minimum wage and overtime requirements under either the executive employee or administrative employee exceptions.

the whole point of the FLSA is to protect workers by overriding contractual relations through statute. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The [FLSA] statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts ....").

Defendants offer no discussion in their briefing of the six factors that must be analyzed under the economic realities test to evaluate an employment relationship between them and the sixteen direct care workers ("workers"). Additionally, at no point do Defendants argue that the staffing agencies, rather than H2H, supervised and controlled the workers. Instead, Defendants direct the Court's attention to the H2H policies handbook, which states, "Contract Staff – Unlimited hours per week/1099 contracted through independent contracting agency. Most staff are contracted for an initial 90 days before being offered a position as an employee." According to Defendants, workers were provided by RAC Staffing and ATS staffing from September of 2015, through July 23, 2016, and they were considered 1099 independent contractors and not employees of H2H. *See* Defs.' Mem. of Law in Opp'n, pp. 3-4; *see also* Defs.' Resp. at ¶¶ 10-12, 27, 38, 42. Duncan argues that she paid the staffing agencies for the provision of workers for that time period. *see also* Defs.' Resp. at ¶ 42. Since H2H classified the workers as independent contractors, Defendants did not limit the number of hours they could work and did not pay them time and a half for overtime hours. *Id*. at ¶¶ 50, 70. Defendants allege it was not their responsibility to pay time and a half for overtime hours as the workers were paid by the staffing agencies. *Id*. at ¶ 70.

The Court rejects Defendants arguments. It must look to the economic realities, not the labels, of the relationship between the workers and Defendants. Setting aside the issue of whether the staffing agencies were legitimate, all of the individuals listed on Updated Schedule A,

including the sixteen workers identified by Defendants, were employees of Defendants under the economic realities test. The label Defendants placed on the workers, whether it be "independent contractors," "contract staff," "1099 workers" or "on probation," cannot overcome the economic reality of the relationship that existed between Defendants and the workers.

The first factor of the economic realities test - *i.e.*, the degree of the worker's right to control the manner in which work is to be performed - weighs in favor of employee status. Indeed, Defendant had plenary control over the workers manner of performing their duties. Duncan admitted she was responsible for all admissions, discharges and overall care of H2H's clients. Defendants controlled the employees' assignments, their work schedules and their pay rate. Duncan admitted she hired employees (including direct care workers), set the pay rate of all employees (*i.e.*, who is salaried, hourly, and who is "contract staff"/independent contractor), disciplines employees, and fires employees. Defendants determined how the workers would be paid, and they tracked workers' hours on timesheets they provided. The workers' timesheets were given to H2H supervisors who submitted them to Murphy. Defendants also provided orientation and training to workers, and they supervised the workers. Thus, not surprisingly, some employees did not believe they were working for or affiliated with the staffing agencies. For these reasons, no question exists that the workers did not control the manner they performed direct care work for H2H. *See* Pl.'s SOF ¶¶ 9-13, 15, 17, 19, 25, 27-30, 47-48, 60; *see also* Defs.' Resp. ¶¶ 9-13, 15, 17, 19, 25, 27-30, 47-48, 60.

The second factor – *i.e.*, the worker's opportunity for profit or loss depending upon his/her managerial skill – also weighs strongly in favor of employee status. The workers had no ability to make a profit as they had no clients outside of H2H clients. Furthermore, they did not have their own employee identification number, their own worker's compensation insurance or their own

liability insurance. Thus, the workers had no real opportunity for profit outside of H2H. *See* Pl.'s SOF ¶¶ 82-85; *see also* Defs.' Resp. ¶¶ 82-85.

The third factor – *i.e.*, the worker's investment in equipment or materials required for his/her task, or his/her employment of helpers – weighs in favor of employee status, as no evidence exists in the record that the workers invested anything or required any materials to provide direct care services to H2H's clients.

The fourth factor – *i.e.*, whether the service rendered requires special skills – weighs in favor of employee status as the workers had no special skills. In fact, there was no requirement for any special skills for direct care workers, and neither a degree nor specialized training was required. The only requirements for employment as a direct care worker was being eighteen years of age and passing of a background check. *See* Pl.'s SOF ¶¶ 45-46; *see also* Defs.' Resp. ¶¶ 45-46. Thus, no doubt exists that direct care workers required no special skills.

The fifth factor – *i.e.*, the degree of permanence of the working relationship – weighs in favor of employee status. The workers spent all of their time consistently working for H2H for several months at a time. *See* Pl.'s SOF ¶¶ 86-87; *see also* Defs.' Resp. ¶¶ 86-87. The degree of permanence is also demonstrated by the exclusivity, continuity and length of the working relationship.

Lastly, the sixth factor – *i.e.*, whether the service rendered is an integral part of the alleged employer's business – also weighs in favor of employee status. Defendants provide direct care for adults with intellectual or physical disabilities, or other individuals who require assistance. Direct care workers cared for these clients. Consequently, the sixteen direct care workers were a central part of Defendants' business as profit was generated through the workers being able to provide direct care services to clients. *See* Pl.'s SOF ¶¶ 2, 39, 88; *see also* Defs.' Resp. ¶¶ 2, 39, 88. The

other employees at issue on Updated Schedule A (*e.g.*, house managers, program specialists and administrative staff) were also expected to cover direct care shifts as well as to ensure the direct care services were complying with standards to keep H2H operational. *See* Pl.'s SOF ¶¶ 40-41, 49; *see also* Defs.' Resp. ¶¶ 40-41, 49.

All six factors to evaluate the employment relationship between workers and Defendants under the economic realities test weigh heavily in favor of the Court concluding that the sixteen direct care workers were Defendants' employees as a matter of law. Defendants' position that the workers were independent contractors is untenable in light of the economic realities test.

Because Defendants admitted they did not pay these workers overtime at a rate of at least one and one-half times their regular rate for all hours worked in excess of forty hours a workweek while they served as alleged independent contractors, the Court grants the Secretary's motion for partial summary judgment on this issue. The Court holds as a matter of law that Defendants violated Section 7 of the overtime requirements of the FLSA.

### B. FLSA Recordkeeping Violations

The Secretary contends that Defendants violated Section 11(c) of the FLSA, 29 U.S.C. § 21(c), by failing to create and maintain accurate time and pay records. *See* Pl.'s Motion, p. 2; *see also* Pl.'s Mem. of Law, pp. 11-14; Pl.'s Reply, pp. 10-12. Pay records, which must be maintained for three years, must include hours worked per day and week, records of amounts paid to each employee per week, as well as the daily starting and stopping time of individual employees. *See* 29 C.F.R. §§ 516.2(7), 516.2(8), 516(a), 516.6(a)(1). The burden is on the employer to keep accurate records. *See Dole v. Solid Waste Serv., Inc.*, 733 F.Supp. 895, 924 (E.D. Pa. 1989) (citing *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 127-28 (3d Cir. 1984)).

Defendants have admitted that prior to July of 2016, they failed to maintain complete pay and time records for all of their employees. *See* Defs.' Mem. of Law in Opp'n., p. 7. Defendants do not deny that they failed to maintain all time records for employees for 2018 and 2019. *See* Defs.' Resp. ¶¶ 74-75. The Secretary is correct in asserting that Defendants cannot deflect their responsibilities under the FLSA to payroll processing companies. The Court holds, as a matter of law, that Defendants violated the Section 11(c) recordkeeping requirements of the FLSA, and it grants the Secretary's motion for partial summary judgment on this issue.

### C. Willfulness

The Secretary filed his Complaint on September 25, 2017, seeking, in part, a judgment against Defendants as to back wage compensation and an equal amount due in liquidated damages. Pursuant to 29 U.S.C. § 255(a), he contends the applicable limitations period for FLSA claims is three years because there is no genuine dispute that Defendants' violations of the FLSA were willful. *See* Pl.'s Mem. of Law, pp. 16-18; *see also* Pl.'s Reply, pp. 14-15. Under 29 U.S.C. § 255(a), litigation to enforce a cause of action pursuant to the FLSA must be "commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." The Secretary argues that Defendants acted with – at a minimum – reckless disregard sufficient to establish that their violations of the FLSA were willful as a matter of law. *See* Pl.'s Mem. Of Law, pp. 16-18. The Court believes genuine disputes of material fact exist as to Defendants' willfulness, and it denies the Secretary's motion for partial summary judgment on this issue at this juncture.

The Supreme Court set forth the standard which determines whether violations of the FLSA are willful in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). There, the Court held that an employer "willfully" violated the Act when it "knew or showed reckless disregard for the matter

of whether its conduct was prohibited" by the FLSA. *Id.* at 133. It does not require a showing of egregiousness. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993). Third Circuit cases have differed on whether willfulness is a question of law or fact. Compare *Stone v. Troy Construction, LLC,* 935 F.3d 141 (3d Cir. 2019) (willfulness is a question of fact), and *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 126 (3d Cir. 2017) (willfulness is a question of fact, but may be a matter of law if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party) with *Pignataro v. Port Auth. of New York & New Jersey*, 593 F.3d 265, 273 (3d Cir. 2010) (willfulness is a question of fact) and *Martin*, 949 F.2d at 1292 (willfulness is a question of law).

By moving for summary judgment on the issue of willfulness, the Secretary is asserting that no reasonable jury could conclude that Defendants had not acted willfully. Such a conclusion cannot be drawn from the record before the Court. The Secretary wants the Court to deem RAC Staffing and ATS Staffing sham staffing agencies created for Defendants' benefit to misclassify employees. He sets forth evidence from which he believes the Court can make such a determination as a matter of fact. Additionally, the Secretary argues that Defendants' willfulness is demonstrated by intentionally including false information in their payroll records, refusing to provide all time and pay records during the investigation, continuing to not pay straight time for overtime hours worked, and failing to create and maintain accurate payroll records. *See* Pl.'s Mem. of Law, pp. 16-18; *see also* Pl.'s Reply, pp. 14-15. Defendants respond that the staffing agencies were legitimate agencies, and they highlight how some workers knew they were hired by the agencies and were not employees of H2H. Defendants also direct this Court's attention to the fact that the Wage and Hour Investigator told them not to produce documents or information regarding

employees who were considered "family" or contract staff of the agencies. Lastly, Defendants submit that they did not withhold any documents. *See* Defs.' Mem. of Law, pp. 9-11.

The Court believes that the record before it strongly suggests that Defendants committed willful violations of their obligations under FLSA. However, the Court cannot, at this juncture, say that no reasonable jury could find that the actions of Defendants were not willful, but rather, resulted from inexperience, incompetence or some other cause that did not rise to the level of willful misconduct. This is a question that a jury is best suited to answer. *See Stone v. Troy Construction, LLC,* 935 F.3d 141 (3d Cir. 2019) (genuine dispute of material fact remained as to employer's willfulness in violating the FLSA such that the district court erred in applying two-year statute of limitations and concluding claims were untimely). At the summary judgment stage, the facts do not support a finding that Defendants acted with willfulness. Summary judgment in favor of the Secretary on the issue of willfulness is denied.

### D.    Liquidated damages

The Secretary argues that liquated damages are warranted for Defendants' violation of the minimum wage provisions of the FLSA. *See* Pl.'s Mem. of Law, pp. 14-16; *see also* Pl.'s Reply, pp. 14-15. The Secretary, under 16(c) of the FLSA, may recover both unpaid wages and an additional, equal, amount in liquidated damages. *See* 29 U.S.C. § 216(c). Liquidated damages are compensatory, not punitive, and are meant "to ease any hardship endured by employees who were deprived of lawfully earned wages." *Secretary v. American Future Sys., Inc.*, 873 F.3d 420, 433 (3d Cir. 2017). They are mandatory unless the employer shows that (1) it acted in good faith and (2) it had reasonable grounds for believing that it was not violating the Act. *See id.* (emphasis added). "The employee need not establish an intentional violation of the act to recover liquidated damages." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991). Further,

"[d]ouble damages are the norm, single damages the exception." *Id.* Double damages are warranted here

The good faith requirement is "a subjective one that requires that the employer have an honest intention to ascertain and follow the dictates of the Act." *Id.* (alterations, citations and internal quotation marks omitted). To satisfy the good faith prong, employers must show they had an "honest intention" and, critically, that they took affirmative steps to ascertain whether they were in compliance with the FLSA. Failure to take such steps will preclude a finding of good faith. The reasonableness requirement is an objective standard. *Id.* at 907–08; *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982) ("an employer may not rely on ignorance alone in meeting the objective test."). An employer bears a "plain and substantial" burden to prove it is entitled to discretionary relief from liquidated damages. *Martin,* 940 F.2d at 907 (citation omitted). The Court finds that Defendants have not met their burden, which is a difficult burden to meet.

Defendants have admitted that they did not take any affirmative steps prior to Wage and Hour's investigation to ensure they were in compliance with the FLSA. *See* Pl.'s SOF ¶ 78; *see also* Defs.' Resp. ¶ 78. They concede that they made absolutely no effort to ascertain and follow the dictates of the FLSA. By taking no affirmative steps prior to Wage and Labor's investigation, Defendants cannot demonstrate good faith. This is fatal to Defendants' position and the Court's analysis need proceed no further. *See Martin*, 940 F.2d at 907-10 (concluding the district court had "no discretion to deny liquidated damages" because the defendant had not demonstrated that it took affirmative steps to ascertain the legality of its pay practices and remanding for an order awarding mandatory liquidated damages).

The Court is without discretion to deny the Secretary liquidated damages provided for by the FLSA. Therefore, the Secretary's motion for summary judgment on the issue of liquidated damages is granted with the precise amount yet to be determined.

### E. Injunctive Relief

The Secretary seeks injunctive relief to force Defendants to comply with the FLSA, which he may seek to prevent a defendant from committing future violations of the FLSA. *See Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 424 (3d Cir. 2017). Whether to grant an injunction for an FLSA violation is "within the court's sound discretion." *Solis v. A-1 Mort. Corp*, 934 F.Supp.2d 778 (W.D.Pa. 2013) (citations omitted). In deciding whether to grant an injunction, courts consider the employer's past conduct, the employer's current conduct, and, most importantly, whether the employer can be counted on to comply with the FLSA in the future. *Id.* (citations omitted). In this case, the Secretary seeks prospective injunctive relief on the basis of the summary judgment record alone, without a hearing of any sort. He has cited no authority from this Court or the Third Circuit in which a court has done so. Therefore, the Secretary's request for an injunction is denied, without prejudice to the Court's entering an injunction at a later stage in the proceedings.

**CONCLUSION**

AND NOW, this 15th day of October, 2019, IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment (ECF No. 57), is GRANTED in part and DENIED in part. Plaintiff's partial motion for summary judgment is GRANTED with respect to H2H being a covered enterprise under the FLSA, Duncan's role as an employer under the FLSA, FLSA minimum wage liability, FLSA recordkeeping liability, and liquidated damages. Plaintiff's partial motion for summary judgment is DENIED with respect to the willfulness of the FLSA violations and injunctive relief.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE